# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS WASHAM,       :     Civil No. 1:13-CV-2643
                          :

      Plaintiff       :

                          :     (Chief Judge Conner)

      v.             :

                          :     (Magistrate Judge Carlson)

JUDGE LAWRENCE STENGEL,  :
et al.,                    :
                          :

      Defendants.    :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

Thomas Washam is a state prisoner, who has filed a *pro se* complaint, described as a <u>Bivens</u> action,[1] against two federal judges, and "all the fraudulent judgments affirmed in the Third Circuit Court of Appeals." (Doc. 1) Washam's complaint is an angry, but almost wholly unintelligible, document. In it, Washam appears to express frustration at a series of adverse rulings by state and federal judges in his state criminal case, and subsequent federal habeas corpus and mandamus proceedings. While Washam's anger at the outcome of these proceedings is clear,

_____

[1]<u>See</u> <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), which provides for a private right for damages for persons whose constitutional rights are violated by a government official.

1

little else can be discerned from this pleading, since it contains virtually no well-pleaded factual averments but rather seems to express oddly juxtaposed legal aphorisms along with Washam's own irascible, individual and idiosyncratic views regarding the state of the law. (Id.) The complaint then closes with a demand for $10,000,000 from the defendant judges, consisting of a $3,070,000 default judgment and an additional $6,930,0000 "due to civil rights infringement of disenfranchisement and fraud." (Id., p. 9.)

Washam has not paid the filing fee required by law and appears to intend to seek leave to proceed *in forma pauperis*. For the reasons set forth below, we will grant Washam leave to proceed *in forma pauperis*, but recommend that this complaint be dismissed.

## II. Discussion

### A. Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints filed by prisoners who seek leave to proceed *in forma pauperis* which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a

civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more

heightened form of pleading, requiring a plaintiff to plead more than the
possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may
be granted, the court must accept as true all allegations in the complaint and all
reasonable inferences that can be drawn therefrom are to be construed in the light
most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,
20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's
bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.
Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court
need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not
alleged." Associated Gen. Contractors of Cal. v. California State Council of
Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic
Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a
plaintiff must provide some factual grounds for relief which "requires more than
labels and conclusions, and a formulaic recitation of the elements of a cause of
actions will not do." Id. at 555. "Factual allegations must be enough to raise a right
to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, when a complaint is "illegible or incomprehensible," id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen, supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County

<u>Prison</u>, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).[2]

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this Court.

**B.      This  Complaint Fails to State A Claim Upon Which Relief Can Be Granted**

In this particular case, dismissal of this complaint is warranted because Washam's pleading fails on multiple scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. Indeed, Washam's complaint is fatally flawed in at least four separate, and fundamental, respects. The flaws in the *pro se* complaint lodged by Washam are discussed below.

---

[2]In the first instance Rule 8 dismissals are often entered without prejudice to allowing the litigant the opportunity to amend and cure any defects, but dismissal can be with prejudice when it is ultimately determined that the deficiencies in a complaint cannot be cured. <u>See, e.g.</u>, <u>Rhett v. New Jersey State Superior Court</u>, 260 F.App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen</u>. <u>supra</u>;  <u>Scibelli v. Lebanon County, supra.</u>

1.    **This Complaint Violates Rule 8 of the Federal
      Rules of Civil Procedure**

At the outset, dismissal of this complaint is warranted because the complaint

fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief."  Dismissal of this complaint is appropriate since it is

well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint

contain 'a short and plain statement of the claim showing that the pleader is entitled

to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,'

Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir.

2007).  Thus, when a complaint is "illegible or incomprehensible", id., or when a

complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785,

787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly

appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v.

New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v.

Cohen. supra;  Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of

Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005).  Furthermore, dismissal under Rule

8 is proper when a complaint "left the defendants having to guess what of the many

things discussed constituted [a cause of action];" Binsack v. Lackawanna County

Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and

unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. <u>See, e.g.,</u> <u>Moss v. United States</u>, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); <u>Radin v. Jersey City Medical Center</u>, 375 F. App'x 205 (3d Cir. 2010); <u>Earnest v. Ling</u>, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); <u>Oneal v. U.S. Fed. Prob.</u>, CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

Here, Washam's complaint is devoid of well-pleaded facts and is largely incomprehensible. The complaint, therefore, hardly "contain[s] 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Further, the averments set forth in the complaint consist of an apparent, but often incomprehensible, catalogue of complaints regarding rulings in other cases, a list of litigation outcomes that are presented without any context, content, coherence or continuity, making it virtually impossible to ascertain the legal

and factual significance of Washam's allegations. Thus, we are "left . . . having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011). In such instances, Rule 8 calls for the dismissal of the complaint.

2.    **To the Extent That Washam Seeks to Re-litigate Claims the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters**

In addition, Washam's complaint appears to attempt to re-litigate matters which were previously resolved by other federal district courts and set aside what Washam refers to as "all the fraudulent judgments affirmed in the Third Circuit Court of Appeals." (Doc. 1)

In conducting an initial screening assessment of this aspect of Washam's complaint: "We have the authority to apply the doctrine of claim preclusion or *res judicata sua sponte.* Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); <u>Ezekoye v. Ocwen Federal Bank FSB</u>, 179 F.App'x 111, 114 (3d Cir.2006) (non precedential). [and] can . . . invoke *res judicata* 'if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' <u>Gleash</u>, 308 F.3d at 760." <u>Guider v. Mauer</u>, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009). In our view, upon a preliminary screening review of Washam's latest lawsuit, the *res judicata*, collateral estoppel and issue preclusion

doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to the prior district court rulings and "all the fraudulent judgments affirmed in the Third Circuit Court of Appeals." (Doc. 1) Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery

> Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form,
> collateral estoppel also required "mutuality"-i.e., that the parties on both
> sides of the current proceeding be bound by the judgment in the prior
> proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern
> doctrine of non-mutual issue preclusion, however, a litigant may also be
> estopped from advancing a position that he or she has presented and lost
> in a prior proceeding against a different adversary. See Blonder-Tongue
> Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane
> Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to
> apply, the party to be precluded must have had a "full and fair"
> opportunity to litigate the issue in the first action. See Parklane Hosiery,
> 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly,

principles of collateral estoppel compel a later court to honor the an earlier decision

of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d

Cir. 1997). This doctrine, which involves an assessment of the overlap between

issues presented in separate lawsuits, raises essentially legal questions which are

often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United

States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski

v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co.

v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir.

1995)(summary judgment, offensive issue preclusion).

Here, we find that, to the extent that the claims made by Washam invite us to

set aside "all the fraudulent judgments affirmed in the Third Circuit Court of

Appeals," (Doc. 1), the legal requisites for issue preclusion are fully satisfied, since

Washam's complaint appears to recite that: " '(1) the issue sought to be precluded

[is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). Therefore, these claims should be dismissed.

### 3.   The Rooker-Feldman Doctrine Also Bars Consideration of This Case

Moreover, at this juncture, where Washam has filed a civil action which apparently invites this court to reject findings made by prior state and federal courts in the course of an array of litigation instigated by the plaintiff, the plaintiff also necessarily urges us to sit as an appellate court and review, re-examine and reject these court rulings in Washam's prior cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which

a decision could be had, may be reviewed by the Supreme Court....". <u>See also</u> <u>Desi's Pizza, Inc. v. City of Wilkes Barre</u>, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery,</u> 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he <u>Rooker-Feldman</u> doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." <u>Turner v. Crawford Square Apartments III, LLP</u>,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the <u>Rooker-Feldman </u>doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [<u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>], 544 U.S. at 284, 125 S.Ct. at 1521-22; <u>see also</u> <u>Lance v. Dennis</u>, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

<u>Id.</u>

However, even within these narrowly drawn confines, it has been consistently recognized that the <u>Rooker-Feldman</u> doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments," particularly where those lawsuits necessarily require us to re-examine the outcome of this state criminal case. As the United States Court of Appeals for the Third Circuit has observed in dismissing a similar lawsuit which sought to make a federal case out of state court rulings made in litigation relating to a prior state criminal case:

> The Rooker-Feldman doctrine divests federal courts of jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir.2006) (internal citations omitted). The doctrine occupies "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. at 291, 125 S.Ct. 1517. . . . Ordering the relief he seeks, however, would require the District Court to effectively determine that the state courts' jurisdictional determinations were improper. Therefore, [Plaintiff] Sullivan's claims are barred by the Rooker-Feldman doctrine. To the extent Sullivan was not "appealing" to the District Court, but instead was attempting to relitigate issues previously determined by the Pennsylvania courts, review is barred by res judicata . See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir.2009) (describing conditions in Pennsylvania under which collateral estoppel will bar a subsequent claim).

Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

This principle applies here. Thus, in this case, as in Sullivan, the Rooker-Feldman and *res judicata* doctrines combine to compel dismissal of this case, to the extent that Washam improperly invites us to act as an appellate court for matters and claims relating to litigation arising out of the plaintiff's state criminal prosecution.

**4.**     **The Judges and Judicial Staff  Named in this Lawsuit Are Entitled to Immunity**

Further, in its current form, Washam's *pro se* complaint fails to state a claim against the numerous state and federal judges, and courthouse staff named or mentioned in this action.  Liberally construed, this *pro se* complaint seeks to various judges personally liable for alleged civil rights violations arising out of the performance of judicial acts in Washam's prior cases.  To the extent that Washam seeks in this complaint to hold any judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon these prior lawsuits, it is well-settled that such officials are individually cloaked with immunity from liability.  The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities.  In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20  (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Washam from maintaining this civil action against any state or federal judges named in this complaint since these judges are entitled to judicial immunity for their actions in these state and federal proceedings and are absolutely immune from personal liability for any judicial acts, including presiding over a criminal case or sentencing a defendant. See, e.g., Arsad v. Means, 365 F.App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting a similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010),

aff'd, 447 F. App'x 397 (3d Cir. 2011); Kwasnik v. Leblon, 228 F. App'x 238, 243

(3d Cir. 2007) ("A judicial officer in the performance of his or her duties has absolute

immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9

(1991). "A judge will not be deprived of immunity because the action he took was

in error, was done maliciously, or was in excess of his authority; rather, he will be

subject to liability only when he has acted in the 'clear absence of all jurisdiction.' "

Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ).

The scope of these protections extend beyond judges to those court personnel

who take discretionary actions at the direction of the courts. As this Court has

observed:

> Quasi-judicial officers, who act in accordance with their duties or at the
> direction of a judicial officer, also are immune from suit. See Gallas,
> 211 F.3d at 772-73 (court administrator entitled to immunity for release
> of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d
> 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court
> direction, was immune from suit). The doctrine of absolute quasi-
> judicial immunity has been applied to court support personnel due to
> "the danger that disappointed litigants, blocked by the doctrine of
> absolute immunity from suing the judge directly, will vent their wrath
> on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail,
> 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d
> 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants
> in the judicial process enjoy quasi-judicial immunity as well."). Quasi-
> judicial absolute immunity is available to those individuals, . . . who
> perform functions closely associated with the judicial process.
> Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-
> judicial immunity applied to clerk of courts, an administrative assistant
> to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d
> 491, 494 (3d Cir.1967) (holding that judiciary employees executing

judicial orders are immune from suit); <u>Davis v. Philadelphia County</u>, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

<u>Stout v. Naus</u>, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial and quasi-judicial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual judges and courthouse staff identified in his complaint. In short, since these judges and courthouse personnel are immune from liability for their judicial and quasi-judicial roles in Washam's prior litigation, the plaintiff simply may not maintain an action against any of these defendants, and these claims must all be dismissed.

We are mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  In this case, however, Washam seeks to sue defendants who are absolutely immune–judges–for acts which cannot give rise to civil liability–ruling on Washam's prior cases.  Since the plaintiff has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that he has absolutely no

right to relief against the named defendants, granting further leave to amend would be futile or result in undue delay.  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed as to all named defendants without further leave to amend.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, we will GRANT the plaintiff leave to proceed *in forma pauperis* is GRANTED, but IT IS RECOMMENDED that the plaintiff's complaint be dismissed as to all named defendants without further leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of October 2013.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge